COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-05-368-CV

 

 

TEXAS MUNICIPAL LEAGUE          APPELLANTS

INTERGOVERNMENTAL RISK
POOL AND                           AND
APPELLEES

THE
CITY OF THE COLONY, 

A
SELF‑INSURED GOVERNMENTAL ENTITY

 

                                                   V.

 

BRANDON R. BURNS AND JULIANN BURNS,                             APPELLEES

AS GUARDIAN FOR BRANDON R. BURNS                       AND APPELLANTS

                                                                                                        

                                              ------------

 

                 FROM
THE PROBATE COURT OF DENTON COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------

                                          I.  Introduction








In this workers= compensation case, The City of the Colony and Texas Municipal League
Intergovernmental Risk Pool (TML Risk Pool)[1]
appeal the trial court=s judgment
dismissing their appeal of a workers= compensation benefits award in favor of Brandon Burns and Juliann
Burns, as guardian for Brandon Burns (collectively, Burns).  In five issues, appellants complain that the
trial court improperly (1) struck the City=s petition in intervention as untimely, (2) ruled that TML Risk Pool
lacked standing to appeal the workers= compensation appeals panel=s decision, and (3) awarded attorney=s fees.  In his cross-appeal,
Burns complains that the trial court abused its discretion and violated equal
protection standards by not ruling on Burns=s motions for attorney=s fees until after the court had held an evidentiary hearing on the
motions, even though the court approved appellants= motions for attorney=s fees without a hearing.  We
affirm.

                        II. 
Background Facts & Procedural History








Brandon Burns was injured
while performing volunteer services for the City.  At the time of the injury, the City provided
its employees workers=
compensation benefits under an interlocal agreement that created a
self-insurance pool among the City and other political subdivisions.[2]  The TML Risk Pool was the administrative
agency charged with supervising performance of the interlocal agreement,[3]
including, among other things, (1) processing and handling all workers= compensation claims, (2) negotiating with the injured employee and
his or her attorney, (3) defending the City in workers= compensation proceedings, and (4) controlling all aspects of
litigation, including retaining and supervising legal counsel and deciding
whether to appeal a workers= compensation ruling.  The
express terms of the interlocal agreement provided, however, that A[a]ny suit brought or defended by [the TML Risk Pool] shall be in the
name of the [City].@  

As a result of his injury,
Burns filed a claim for workers= compensation benefits from the City. 
TML Risk Pool received the notice of injury and denied the claim on the
ground that Burns=s
intoxication or horseplay was the producing cause of the injury.  On the notice denying the claim, TML Risk
Pool listed itself as the insurance carrier and the City as the employer. 








A contested case hearing
followed, at which the parties stipulated that Burns was an employee of the
City[4]
and that the City provided workers= compensation coverage through self-insurance.  After hearing the evidence, the hearing
officer concluded that Athe carrier
is not relieved of liability@ because Burns was not intoxicated and horseplay was not a producing
cause of Burns=s
injury.  The hearing officer=s decision and order incorrectly identify TML Risk Pool as the
insurance carrier. 

TML Risk Pool appealed the
hearing officer=s
decision.  On August 20, 2002, a workers= compensation appeals panel rendered a decision affirming the hearing
officer=s ruling.  Although the appeals
panel=s decision is styled, ATexas Municipal League Intergovernmental Risk Pool, A Self-Insured
Governmental Entity v. Brandon Burns,@ the decision states that A[t]he true corporate name of the self-insured is CITY OF THE COLONY@ and gives the name and address of the City=s registered agent for service of process.  








TML Risk Pool decided to
appeal the workers=
compensation panel=s decision
to state district court.  Contrary to the
interlocal agreement, however, TML Risk Pool prepared and filed a Plaintiff=s Original Petition in which it named itself as plaintiff.  Thereafter, TML Risk Pool and the City
realized that the district court lawsuit had not been filed in the City=s name, as required by the interlocal agreement.  Consequently, on January 17, 2003, nearly
five months after the appeals panel rendered its decision, the City filed a
petition in intervention naming itself as the self-insured.  The City alleged that it Ahas a justiciable interest in the matters in controversy in this
litigation in that it is a self-insured carrier of the claimant [Burns] and is
liable for any compensation awarded to the claimant.@  

Burns moved to strike the
City=s petition in intervention, to dismiss the case for lack of
jurisdiction, and for sanctions.  Burns
asserted that the trial court lacked subject matter jurisdiction over the case
because the proper self-insured insurance carrierCthe CityChad not
filed suit by the fortieth day after the appeals panel rendered its decision
upholding the benefits award and TML Risk Pool had no standing to sue on the
City=s behalf.[5]









Appellants moved for leave to
substitute the City for TML Risk Pool as the party-plaintiff.  In support of their motion, appellants
alleged that (1) TML Risk Pool is a governmental entity that administers
workers= compensation claims on behalf of its members, (2) TML Risk Pool does
not, however, insure its members, (3) the members of TML Risk Pool, including
the City, are self-insured governmental entities, (4) the administrative
proceedings incorrectly identified TML Risk Pool as the insurance carrier
rather than the City, but the appeals panel=s final order did note that A[t]he true corporate name of the self-insured is CITY OF THE COLONY,@ and (5) the City was the proper plaintiff in this case because the
City was Athe proper >insurance carrier= as that term is defined by section 401.011(27)(C)@[6] of the labor code.  

Initially, the trial court
denied Burns=s motions to
strike and to dismiss for lack of jurisdiction but took the motion for
sanctions under advisement.  The trial
court granted appellants= motion to
substitute plaintiff in part and Apermitted [the City] to become a plaintiff in this case,@ but it refused to remove TML Risk Pool from the case, ruling instead
that TML Risk Pool Awill be
carried as an involuntary plaintiff.@  








Thereafter, the trial court
reversed its prior rulings and rendered a judgment in which it (1) struck the
City=s petition in intervention on the ground that the City had not timely
appealed the appeals panel=s August 2002 decision and (2) dismissed TML Risk Pool=s suit for lack of standing on the ground that TML Risk Pool was not a
party entitled to judicial review under labor code section 410.252(a).  The trial court also awarded attorney=s fees to Burns=s attorneys
and the attorney ad litem.  This appeal
followed. 

                           III. 
The City=s Petition
in Intervention

In their first issue,
appellants complain that the trial court improperly struck the City=s petition in intervention on the ground that it was untimely under
labor code section 410.252(a). 
Appellants contend that a party=s failure to comply with the forty-day filing deadline in section
410.252(a) does not deprive a trial court of jurisdiction over the case because
the deadline is simply a statute of limitations, not a jurisdictional
prerequisite.  Appellants further contend
that the limitations period was tolled in this case because TML Risk Pool
timely filed its lawsuit and Burns was not misled or disadvantaged by the City=s failure to timely file suit.  













If a party desires to contest
a workers=
compensation appeals panel decision, the party Amay seek judicial review by filing suit not later than the 40th day
after the date on which the decision of the appeals panel was filed with the
division.@[7]  An appeals panel decision
regarding benefits is final in the absence of a timely appeal for judicial
review.[8]  Therefore, the forty-day deadline is
mandatory and jurisdictional.[9]  Nonetheless, the deadline may be equitably
tolled in a misidentification case when (1) two separate, but related, legal
entities use a similar trade name and (2) the suit is brought by the wrong
entity, but (3) the defendant had notice of the suit and was not misled or
disadvantaged by the mistake.[10]


In this case, TML Risk Pool
sued to contest the appeals panel decision by the forty-day deadline, but the
City did not.  TML Risk Pool was the
wrong entity to file suit for several reasons. 
First, the express terms of the interlocal agreement provided that any
suit had to be brought in the name of the City, not in the name of TML Risk
Pool.  Therefore, TML Risk Pool was
contractually barred by the interlocal agreement from naming itself as
plaintiff in the underlying suit.













Second, as appellants alleged
in their motion to substitute plaintiff, only the City was the proper plaintiff
below because only the City was Athe proper >insurance
carrier=@ under the labor code.  The
labor code=s definition
of Ainsurance carrier@ does not include an administrative agency such as TML Risk Pool,
which was created to supervise the performance of an interlocal agreement.[11]  Only the insurance carrier is liable for
compensating an employee for work-related injuries.[12]  An entity that is merely responsible for
administering workers=
compensation benefits on the insurance carrier=s behalf is not a proper party to a suit contesting an appeals panel
decision.[13]  Therefore, although it was responsible under
the interlocal agreement for handling litigation on the City=s behalf, TML Risk Pool was not a proper party to the underlying suit.[14]

Morever, TML Risk Pool=s misidentification of itself as the plaintiff did not equitably toll
the forty-day deadline for filing suit to seek review of the appeals panel
decision.  TML Risk Pool and the City are
not separate, but related, entities that use similar trade names.  Rather, they are two completely separate
entities with different names and different purposes.  According to its mission statement, TML Risk
Pool, which is located in Austin, exists to Aprovide Texas municipalities and other local governmental units a
stable source of risk financing and loss prevention services.@  It is not a political
subdivision, as appellants suggest, but is instead Aan interlocal agency offering workers= compensation . . . protection to Texas political subdivisions.@[15]  TML Risk Pool is managed by
its board of trustees.








The City, on the other hand,
is a home-rule municipality with a council-manager form of government whose
address is 6800 Main Street, The Colony, Texas. 
Its city council is comprised of a mayor and six council members, none
of whom are on TML Risk Pool=s board of trustees.  Unlike TML
Risk Pool, the City is a political subdivision responsible for extending
workers= compensation benefits to its employees.[16]  Therefore, the timely filing of suit by the
wrong entityCTML Risk
PoolCdid not serve to equitably toll the filing deadline until the proper
entityCthe CityCcould be
made a party to the suit.








Appellants contend that the
supreme court has enunciated different tests for equitable tolling in
misidentification cases depending on whether the wrong defendant is sued or
whether the wrong plaintiff files suit.[17]  Appellants assert that, if the wrong
defendant is sued, the supreme court held in Bass that limitations is
tolled only if (1) there are two separate, but related, entities that use
similar trade names and (2) the correct entity had notice of the suit and was
not misled or disadvantaged by the mistake.[18]  Appellants further assert that, if the wrong
plaintiff files suit, the supreme court held in Ealey that the only
requirement for equitable tolling of limitations is that the defendant was not
misled or disadvantaged by the mistake.[19]  We disagree.

In Ealey, the party
that mistakenly filed suit was the parent company of the proper party, its
wholly-owned subsidiary, and both companies were insurance companies.[20]  Thus, the party that mistakenly filed suit
and the proper plaintiff were separate but related entities.  In determining that limitations was equitably
tolled, the supreme court considered both the close relationship and
similarities between the proper and improper plaintiffs and the lack of
prejudice to the defendant, not just the lack of prejudice.[21]  In this case, TML Risk Pool and the City are
not separate but related entities. 
Therefore, assuming, without deciding, that the supreme court has
enunciated slightly different tests for equitable tolling depending on whether
the misidentified party is the plaintiff rather than the defendant, appellants
do not satisfy either test.

For all of these reasons, we
hold that the trial court did not err by striking the City=s petition in intervention on the ground that the City did not timely
appeal the appeals panel=s August
2002 decision affirming the benefits award to Burns.  We overrule appellants= first issue.








                                IV.  TML Risk Pool=s Standing

In their second issue,
appellants complain that the trial court improperly dismissed TML Risk Pool=s suit for lack of standing on the ground that TML Risk Pool was not a
party entitled to judicial review under labor code section 410.252(a).  Appellants assert that TML Risk Pool provides
workers= compensation benefits on behalf of the City and that both the City
and TML Risk Pool are Ainsurance
carriers@ as that term is defined in labor code section 401.011(27)(D).  

As we discussed in the
previous section, TML Risk Pool is not an Ainsurance carrier@ as that term is used in the labor code.  Further, appellants= assertions are directly contrary to TML Risk Pool=s position in the trial court. 
In its motion to substitute plaintiff, TML Risk Pool averred that it did
not insure the City, but merely Aadministered@ workers= compensation claims on behalf of the City, which was a self-insured
entity.  








Standing pertains to a person=s justiciable interest in the suit.[22]  A party has standing to sue when it is
personally aggrieved, regardless of whether it is acting with legal authority.[23]  A person may seek judicial review under
section 410.252(a) only if it has exhausted its administrative remedies and Ais aggrieved by a final decision of the appeals panel.@[24]








An association has standing
to sue on behalf of its members when (1) its members would otherwise have standing
to sue in their own right; (2) the interests it seeks to protect are germane to
the organization=s
purpose;  and (3) neither the claim
asserted nor the relief requested requires the participation of individual members
in the lawsuit.[25]  Regarding the third prong of the
associational standing test,  whether an
association has standing to invoke the court=s remedial powers on behalf of its members depends in substantial
measure on the nature of the relief sought.[26]  If the association seeks a declaration,
injunction, or some other form of prospective relief, Ait can reasonably be supposed that the remedy, if granted, will inure
to the benefit of those members of the association actually injured,@ and the third prong of this test is satisfied.[27]  But if the association seeks damages on
behalf of its members or must otherwise prove the members= individual circumstances to obtain relief, participation of the
individual members is required, and the third prong is not satisfied.[28]








In this case, TML Risk Pool
is not personally aggrieved by the appeals panel decision because it is not
liable for the workers=
compensation benefits awarded to Burns. 
Only the City, as the self-insured carrier, is liable,[29]
and the appeals panel decision so states.[30]  TML Risk Pool does not assert that the
self-insured pool will be harmed unless the appeals panel decision is
reversed.  Further, assuming, without
deciding, that the associational standing doctrine applies to workers= compensation appeals, TML Risk Pool did not seek a declaration,
injunction, or other relief on behalf of its members in general.  Instead, it filed suit on behalf of only one
individual member, the City.  To prevail
in its suit, TML Risk Pool would have to prove the City=s individual circumstancesCthat the workers=
compensation benefits for which the City is liable were improperly awarded to
Burns.  Thus, the City=s individual participation is required, and the third prong of the
associational standing test is not satisfied. 
Accordingly, the trial court properly dismissed TML Risk Pool=s suit for lack of standing.  We
overrule appellants= second
issue.

                                       V.  Attorney=s Fees

          A.  Admission of
Burns=s Attorneys= Testimony Regarding Fees

In their third issue,
appellants complain that the trial court improperly ordered the City to pay
attorney=s fees to Burns=s attorneys
because the attorneys were not parties to the lawsuit and the fee award was
based on inadmissible evidence.  

Section 408.221(c) of the
labor code provides in pertinent part as follows:

An
insurance carrier that seeks judicial review . . . of a final decision of the
appeals panel regarding compensability or eligibility for, or the amount of,
income or death benefits is liable for reasonable and necessary attorney=s
fees . . . incurred by the claimant as a result of the insurance carrier=s
appeal, if the claimant prevails on an issue on which judicial review is sought
by the insurance carrier.[31]

 








The trial court determined that Burns was the
prevailing party under section 408.221(c).[32]  Appellants do not contest this
determination.  Further, they did not
complain in the trial court that the fees should have been awarded to Burns
rather than his attorneys.  Therefore,
this complaint is waived on appeal.[33]

Next, appellants complain
that the fee award was improper because it was based on inadmissible
evidence.  Appellants assert that the
trial court should have excluded the attorneys= testimony regarding their fees because Burns failed to produce the
attorneys= internal Acase notes@ and billing
records regarding their fees in response to appellants= requests for disclosure and for production of documents. 








Burns does not dispute either
that appellants requested the documents or that he failed to provide them.  Indeed, one of Burns=s attorneys, Kay Goggin, admitted to the trial court that appellants
were never given the records.  She
explained, however, that Burns had never seen the records, either, because the
documents were not billing statements. 
Instead, the records were kept internally by Goggin and her co-counsel,
Barbara Lombrano-Williamson, to aid them in preparing their applications for
attorney=s fees.  Goggin stated that her
reasons for not producing the records were (1) she feared that she would Agive away strategy@ by producing the records, (2) the labor code requires the trial court
to award attorney=s fees
solely based on written evidence,[34]
(3) Burns had submitted three motions for attorney=s fees, supported by Goggin=s affidavits, and no one had objected to them, and (4) the trial court
was approving appellants= fee
requests without requiring their internal records. 

The trial court excluded
Burns=s attorneys= internal
billing records but allowed the attorneys to testify regarding their attorney=s fees.  Appellants complain
that this testimony should have been excluded because it was based, at least in
part, on the excluded internal billing records.








A party who fails to make,
amend, or supplement a discovery response in a timely manner may not introduce
in evidence the material or information that was not timely disclosed, unless
the court finds that (1) there was good cause for the failure to timely
disclose or (2) the failure will not unfairly surprise or prejudice the other
parties.[35]  AThe salutary purpose of [this rule] is to require complete responses
to discovery so as to promote responsible assessment of settlement and prevent
trial by ambush.@[36]  The burden of establishing
good cause or lack of unfair surprise or prejudice is on the party seeking to
introduce the evidence.[37]  The trial court has discretion to determine
whether the offering party has met its burden;[38]
however, a finding of good cause or the lack of unfair surprise or unfair
prejudice must be supported by the record.[39]













In this case, although Burns
did not disclose his attorneys= internal records in response to appellants= request for disclosure,[40]
Burns did identify Goggin and Williamson as experts who would testify
concerning the reasonableness and necessity of his attorney=s fees.  Further, long before he
sought to admit Goggin=s and
Williamson=s testimony
regarding the fees, Burns submitted three motions for attorney=s feesCin May 2003,
August 2003, and January 2005.[41]  In all three motions Burns asserted that, if
he prevailed against appellants in their appeal, appellants would be liable for
his attorney=s fees under
labor code section 408.221(c).  Burns
supported each of the motions with Goggin=s affidavit,[42]
in which she listed the number of hours that she and Williamson had each
expended on the case to date, their hourly rate and how it compared to rates
for similar work in Dallas, the amount of legal assistant time and the hourly
rate, and the amount of expenses incurred to date.  Goggin=s affidavits also set out her credentials and experience as an
attorney handling workers=
compensation cases and listed the specific matters that she and Williamson had
handled for Burns with regard to this case: 
prosecuting Burns=s workers= compensation claim at the administrative phase of the proceeding,
defending against appellants= appeal of the panel decision to the trial court, handling many legal
issues, engaging in extensive discovery, taking two depositions, and filing a
motion to dismiss. 

Based on this information,
the trial court ruled that Burns had disclosed the fact that Goggin and
Williamson would testify as experts concerning their attorney=s fees and the fact that Burns would request that his fees be assessed
against the insurance carrier if he prevailed against appellants in their
appeal.  The trial court further ruled
that Burns had disclosed many of the matters about which Goggin and Williamson
proposed to testify, such as the amount of fees they had requested, the number
of hours they claimed to have worked, and their hourly rates.  Accordingly, the trial court concluded that
appellants would not be unfairly surprised by Goggin=s and Williamson=s testimony.








These rulings are, as we have
discussed, supported by the record. 
Moreover, the trial court reasonably could have concluded that
appellants were not Aambushed@[43] by Burns=s failure to
disclose the internal billing records, but instead had been provided sufficient
information to enable them to properly cross-examine Goggin and Williamson
regarding the reasonableness of and necessity for their fees.  Therefore, we hold that the trial court did
not abuse its discretion by allowing Goggin and Williamson to testify, despite
the fact that Burns did not properly respondCor objectCto
appellants= request for
disclosure.[44]  We overrule appellants= third issue.

 

                                 B.  Attorney Ad Litem=s Fees

In their fourth issue,
appellants complain that the trial court improperly awarded attorney=s fees to Chris Raesz, the attorney ad litem, because there is no
statutory authority to support the award, neither Burns nor Raesz filed any
pleadings seeking to recover Raesz=s fees from appellants, and Raesz was not disclosed as an expert
witness on attorney=s fees, nor
were any documents produced during discovery supporting his testimony
concerning fees. 








Raesz filed a ACertificate of Attorney@ and a ASupplemental
Certificate of Attorney@ in which he
certified that he had, as Brandon Burns=s court-appointed attorney ad litem, devoted a total of 73.8 hours of
time and incurred $6.06 in expenses while representing Burns in this case.  He requested a total of $14,766.06 in
attorney=s fees and expenses.  Raesz
supported each of these certificates with a detailed list of the services he
had provided.  He did not, however, state
in the certificates that he was seeking these fees and costs from appellants,
nor did Burns file a pleading specifically seeking these fees and costs from
appellants.

The trial court=s judgment orders that Raesz, Aas court appointed Attorney Ad Litem for the above incapacitated
person [i.e., Brandon Burns], shall be paid the total sum of $9,006.06 as a
statutory commission pursuant to ' 241(a) or 665(b) of the Texas Probate Code . . . by the City of the
Colony.@ 








Section 241(a) of the probate
code provides that A[e]xecutors,
administrators, and temporary administers of an estate@ are entitled to receive a commission as compensation for their
services performed in the administration of the estate.[45]  Section 665(b) provides that A[t]he guardian or temporary guardian of an estate is entitled to
reasonable compensation on application to the court.@[46]  Raesz was Burns=s attorney ad litem, not an executor, administrator, or guardian of
his estate.  Therefore, neither section
241(a) nor section 665(b) authorized the Astatutory commission@ that the trial court awarded Raesz.








Nonetheless, probate code
section 34A provides that each attorney ad litem appointed Ato represent the interests of a person having a legal disability . . .
is entitled to reasonable compensation for services in the amount set by the
court and to be taxed as costs in the proceeding.@[47]  Section 622(a) provides that A[t]he laws regulating costs in ordinary civil cases apply to a
guardianship matter unless otherwise expressly provided for by this chapter.@[48]  Texas Rule of Civil Procedure
131 provides that A[t]he
successful party to a suit shall recover of his adversary all costs incurred
therein.@[49]  The underlying case was
decided by the probate court as a matter ancillary to Burns=s guardianship proceeding. 
Burns pleaded for costs of court and was the successful party at
trial.  Nothing in the chapter of the
probate code governing guardianships provides for the taxing of Raesz=s fees other than as costs under rule 131.  Therefore, the trial court was authorized to
assess Raesz=s fees and
expenses against appellants.[50]








Finally, assuming, without
deciding, that Burns should have designated Raesz as an expert witness and
provided documentation during discovery supporting his fees, we note that the
trial court held two hearings, four months apart, on Raesz=s fee applications.  Appellants
were put on notice at the first of those hearings that Raesz was seeking his
fees from appellants, that he would testify concerning his fees, and of the
content of his testimony.  Further, over
a month before the first hearing, appellants had received a copy of Raesz=s initial ACertificate
of Attorney,@ to which
was attached an exhibit detailing the bulk of the services for which Raesz was
requesting fees.  In addition, the trial
court continued the first hearing on Raesz=s fee request to give appellants time to controvert Raesz=s testimony.  In light of these
things, the trial court reasonably could have concluded that Burns=s failure to designate Raesz as an expert witness or to provide
discovery responses documenting his fees did not unfairly surprise or prejudice
appellants.[51]  Accordingly, the trial court did not abuse
its discretion by allowing Raesz to testify concerning his fees.  We overrule appellants= fourth issue.

                          C. 
Attorney=s Fees for
Post-Trial Work

In their fifth issue,
appellants contend that the trial court erred in awarding Burns additional
attorney=s fees for post-trial work because there is no evidence to support the
award.[52]  

 








The trial court rendered its
final judgment on July 21, 2005, in which it 
awarded Burns attorney=s fees incurred through May 11, 2005. 
Thereafter, on October 7, 2005, Burns filed a motion for supplemental
attorney=s fees under labor code section 408.221(c), which were incurred
between May 12, 2005 and October 3, 2005. 
The motion was supported by Goggin=s affidavit, which listed the services Goggin and Williamson had
provided, the number of hours they had each worked on the case between May 12
and October 3, their hourly rates, and the expenses they had incurred during
that time.  Attached to Goggin=s affidavit were her and Williamson=s curricula vitae setting forth their qualifications and experience,
as well as additional documentation listing in detail the services provided and
expenses incurred.  On October 20, 2005,
the trial court entered an order approving the fees and expenses and ordering
the City to pay them.  








An attorney=s fee award under section 408.221 must be based on written evidence
presented to the court.[53]  In approving an attorney=s fee, the court shall consider (1) the time and labor required, (2)
the novelty and difficulty of the questions involved, (3) the skill required to
perform the legal services properly, (4) the fee customarily charged in the
locality for similar legal services,  (5)
the amount involved in the controversy, (6) the benefits to the claimant that
the attorney is responsible for securing, and (7) the experience and ability of
the attorney performing the services.[54]  Goggin=s affidavit, coupled with the supporting documentation, is sufficient
evidence to establish these factors and support the trial court=s fee award.  Accordingly, we
hold that the evidence is legally sufficient to support the order awarding
post-trial attorney=s fees and
expenses.[55]  We overrule appellants= fifth issue.

                                   VI.  Burns=s Cross-Appeal

In his cross-appeal, Burns
complains that the trial court abused its discretion and violated equal
protection standards by not ruling on Burns=s motions for attorney=s fees until after it had held an evidentiary hearing on those
motions, even though the court approved appellants= motions for attorney=s fees without a hearing. 








Trial court error does not
require reversal of the trial court=s judgment unless it probably caused the rendition of an improper judgment
or probably caused the appellant from presenting the case to the court of
appeals.[56]  Assuming, for argument=s sake, that the trial court erred as Burns contends, Burns does not
explain how the trial court=s error probably resulted in the rendition of an improper
judgment.  The trial court=s judgment awards Burns $87,328.59 for reasonable and necessary
attorney=s fees and expenses incurred from September 25, 2002 through May 11,
2005.  This award includes 400 hours of
attorney time at the rate of $200 per hour.[57]  Although the trial court did not award Burns
all of the attorney=s fees that
he requested,[58]
Burns does not explain how the award would have been higher if the trial court
had ruled on his motions for attorney=s fees without first holding an evidentiary hearing.  For instance, Burns does not contend that the
trial court improperly ruled that some of the fees he requested were not
reasonable or necessary.[59]  Because the record does not show that the
trial court=s holding of
an evidentiary hearing before ruling on Burns=s motions for attorney=s fees probably resulted in the rendition of an improper judgment, we
overrule Burns=s issues on
cross-appeal.[60]

                                         VII.  Conclusion








Having overruled all of the
parties= issues on appeal and cross-appeal, we affirm the trial court=s judgment.

 

 

WILLIAM H. BRIGHAM

JUSTICE

 

PANEL
A:  DAUPHINOT and GARDNER, JJ. and
BRIGHAM, J. (Senior Justice, Retired, Sitting by Assignment)

 

DELIVERED:  November 22, 2006

 

 

 

 

 

 

 

 

                                                    











[1]For
simplicity, we often refer to these parties collectively as Aappellants.@





[2]As a
political subdivision of the State of Texas, the City was required to extend
its employees workers=
compensation benefits by (1) becoming a self‑insurer; (2) providing
insurance under a workers=
compensation insurance policy; or (3) entering into an interlocal agreement
with other political subdivisions providing for self‑insurance.  Tex.
Lab. Code Ann. ''
504.001(3), 504.011 (Vernon 2006); see also Tex. Gov=t Code Ann. '
2259.031 (Vernon 2000) (providing that a governmental unit may establish a
self-insurance fund to protect itself and its employees from any insurable
risk).





[3]See Tex. Gov=t Code Ann. '
791.013(a) (Vernon 2004) (ATo supervise the performance
of an interlocal contract, the parties to the contract may . . . create an
administrative agency.@).





[4]The
interlocal agreement authorized the City to extend statutory workers=
compensation benefits to all volunteers. 
See Tex. Lab. Code Ann.
''
504.011, .012(a) (Vernon 2006) (providing for same).





[5]See Tex. Lab. Code Ann. '
410.252(a) (Vernon 2006) (providing that a party may seek judicial review by
filing suit not later than the fortieth day after the date on which the
decision of the appeals panel was filed with the division).





[6]Section
401.011(27)(C) has since been renumbered as subsection (D).  See Act of May 28, 2003, 78th Leg.,
R.S., ch. 275, ' 2,
2003 Tex. Gen. Laws 1207, 1207 (current version at Tex. Lab. Code Ann. ' 401.011(27)(D) (Vernon
2006)).  Both former subsection (C) and
current subsection (D) define Ainsurance carrier@ as Aa
governmental entity that self‑insures, either individually or
collectively.@  Tex.
Lab. Code Ann. '
401.011(27)(D).





[7]Tex. Lab. Code Ann. '
410.252(a).





[8]Id. '
410.205(a).





[9]LeBlanc
v. Everest Nat=l
Ins. Co., 98 S.W.3d 786, 789 (Tex. App.CCorpus
Christi 2003, no pet.); Johnson v. United Parcel Serv., 36 S.W.3d 918,
921 (Tex. App.CDallas
2001, pet. denied); Old Republic Ins. Co. v. Warren, 33 S.W.3d 428, 432
(Tex. App.CFort
Worth 2000, pet. denied); Boone v. St. Paul Marine & Fire Ins. Co.,
968 S.W.2d 468, 470 (Tex. App.CFort Worth 1998, pet.
denied); Morales v. Employers Cas. Co., 897 S.W.2d 866, 868 (Tex. App.CSan
Antonio 1995, writ denied); see also Ealey v. Ins. Co. of N. Am., 660
S.W.2d 50, 52 (Tex. 1983) (holding that the twenty-day filing deadline in the
predecessor to section 410.252(a) was a general statute of limitations with
which compliance was required to invoke the trial court=s
jurisdiction).

 

Relying on Dubai Petroleum Co. v. Kazi, 12 S.W.3d 71 (Tex.
2000), appellants urge us to hold that the forty-day deadline is merely a
limitations period rather than a jurisdictional requirement.  In Kazi, the supreme court held that
the plaintiff=s
failure to satisfy the statutory prerequisites of civil practice and remedies
code section 71.031 in a wrongful death case did not deprive the trial court of
subject matter jurisdiction over the case, but merely affected the plaintiff=s
right to obtain relief under the statute. 
Id. at 76 (overruling Mingus v. Wadley, 115 Tex. 551, 285
S.W. 1084 (1926)).  Kazi was not,
however, a workers=
compensation case, nor did it involve the failure to timely file suit following
an administrative proceeding, and the supreme court has not overruled its
holding in Ealey that the deadline for appealing an appeals panel
decision is jurisdictional.  See
660 S.W.2d at 52.  Therefore, we decline
to apply Kazi to this case.  But
see Tex. Dep=t of
Transp. v. Beckner, 74 S.W.3d 98, 103 (Tex. App.CWaco
2002, no pet.) (holding, based on Kazi, that the forty-day filing
deadline in section 410.252(a) is merely a limitations period, not a
jurisdictional requirement).  Moreover,
even if the forty-day deadline were only a statute of limitations, the City=s
petition in intervention would be barred as untimely for the reasons we discuss
herein.





[10]See
Ealey, 660 S.W.2d at 51, 53 (holding that the filing deadline was tolled
where the parent company filed suit rather than the subsidiary, but the
defendant was not misled or disadvantaged by the mistake); Sanchez v. Aetna
Cas. & Sur. Co., 543 S.W.2d 888, 890 (Tex. Civ. App.CSan
Antonio 1976, writ ref=d
n.r.e.) (same); see also Flour Bluff ISD v. Bass, 133 S.W.3d 272, 274
(Tex. 2004) (holding that the statute of limitations is not tolled in a
misidentification case unless two separate, but related, entities that use a
similar trade name are involvedCeven if no one is misled by
the mistake).





[11]Tex. Gov=t Code Ann. '
791.013(a).  The labor code=s
definition of Ainsurance
carrier@
includes only the following:

 

(A)    an insurance company;

(B)    a certified self-insurer for workers=
compensation insurance;

(C)    a certified self-insurance group under Chapter 407A [which excludes
public employees and governmental entities, see Tex. Lab. Code Ann. ' 407A.002(b) (Vernon 2006)];
or

(D)    a governmental entity that
self-insures, either individually or collectively.

 

Tex. Lab. Code Ann. '
401.011 (27).  





[12]Id. '
406.031(a) (Vernon 2006).





[13]See
Bass, 133 S.W.3d at 273 (holding that a third-party administrator is not a
proper party to such a suit).  Although
TML Risk Pool was not a third-party administrator, see Tex. Ins. Code Ann. '
4151.002(16) (Vernon 2006), for the reasons stated herein, we believe Bass=s
holding applies to this situation.  See
also, Johnson, 36 S.W.3d at 920 (holding that the employee and the
insurance carrier were the only parties with an interest in the outcome of
judicial review under section 410.252, because the insurance carrier was liable
for compensation of the employee=s injury).





[14]Indeed,
in its motion for leave to substitute the City as plaintiff below, TML Risk
Pool alleged, A[T]he
Commission=s
decision identifies the Colony as the self-insured, ie., [sic] the only party
that could appeal.@  





[15]The
labor code=s
definition of a Apolitical
subdivision@
responsible for extending workers= compensation benefits does
not include either an administrative agency created to supervise an interlocal
agreement or a self-insurance pool.  Tex. Lab. Code Ann. '
504.001(3)B(4).





[16]Id. ''
504.001(3), .011.





[17]We
are unpersuaded by appellants= suggestion that this is a
misnomer case rather than a misidentification case.  Misnomer occurs when the plaintiff misnames
either itself or the correct defendant, but the correct parties are
involved.  Enserch Corp. v. Parker,
794 S.W.2d 2, 4-5 (Tex. 1990);  Torres
v. Johnson, 91 S.W.3d 905, 908 (Tex. App.CFort
Worth 2002, no pet.).  As we discuss
herein, the correct parties were not involved in this case because the proper
party plaintiffCthe
CityCdid
not timely file the underlying suit.





[18]Bass, 133
S.W.3d at 274.





[19]See
Ealey, 660 S.W.2d at 53.





[20]Id. at
51.





[21]Id. at
51, 53.





[22]Cadle
Co. v. Lobingier, 50 S.W.3d 662, 669 (Tex. App.CFort
Worth 2001, pet. denied) (op. on en banc review).





[23]Nootsie,
Ltd. v. Williamson County Appraisal Dist., 925 S.W.2d 659, 661
(Tex. 1996).





[24]Tex. Lab. Code Ann. '
410.251 (Vernon 2006); Ins. Co. of State of Pa. v. Orosco, 170 S.W.3d
129, 132  (Tex. App.CSan
Antonio 2005, no pet.).





[25]Tex.
Ass'n of Bus. v. Tex. Air Control Bd., 852 S.W.2d 440, 447 (Tex.
1993); Wyly v. Preservation Dallas, 165 S.W.3d 460, 463-64 (Tex. App.CDallas
2005, no pet.).





[26]Tex.
Ass'n of Bus., 852 S.W.2d at 448.





[27]Id.





[28]Id.





[29]Tex. Lab. Code Ann. ' 406.031(a);
Johnson, 36 S.W.3d at 920.





[30]Johnson, on
which appellants rely, does not hold otherwise. 
The only parties to the appeals panel decision in that case were the
actual insurance carrier and the employee. 
36 S.W.3d at 920.





[31]Tex. Lab. Code Ann. '
408.221(c) (Vernon 2006).





[32]See Orosco,
170 S.W.3d at 133-34 (holding that the workers=
compensation claimant was the prevailing party under section 408.221(c) because
he obtained a dismissal of the insurance company=s
workers=
compensation appeal based on lack of standing); see also Dean Foods
Co. v. Anderson, 178 S.W.3d 449, 454 (Tex. App.CAmarillo
2005, pet. denied) (holding that the workers= compensation claimant was
the prevailing party under section 408.221(c) because the insurance carrier=s
nonsuit of its appeal rendered the appeals panel decision final and
enforceable).





[33]See Tex. R. App. P. 33.1(a); Bushell v. Dean, 803 S.W.2d 711, 712 (Tex. 1991)
(op. on reh=g). 





[34]AExcept
as otherwise provided, an attorney=s fee under this section is
based on the attorney=s
time and expenses according to written evidence presented to . . . the court.@  Tex.
Lab. Code Ann. '
408.221(b) (Vernon 2006); see also Transcont=l
Ins. Co. v. Smith, 135 S.W.3d 831, 838 (Tex. App.CSan
Antonio 2004, no pet.) (stating that the attorney=s
time and expenses must be established by written evidence).





[35]Tex. R. Civ. P. 193.6(a).





[36]Alvarado
v. Farah Mfg. Co., 830 S.W.2d 911, 914 (Tex. 1992)  (applying former rule 215(5), the predecessor
to rule 193.6).





[37]Tex. R. Civ. P. 193.6(b); IAC, Ltd. v.
Bell Helicopter Textron, Inc., 160 S.W.3d 191, 202 (Tex. App.CFort
Worth 2005, no pet.).





[38]Alvarado, 830
S.W.2d at 914.





[39]Tex. R. Civ. P. 193.6(b).





[40]Burns
was not required to disclose the records in response to appellants=
request for production of documents because that request only asked Burns to
produce documents Aevidencing
any and all invoices, billing statements or other documents that evidence the
attorneys= fees
that have been billed to you by any attorney representing you in this
matter.@  [Emphasis supplied.]  Goggin testified that Burns was never sent
any bills.  





[41]Goggin
and Williamson testified regarding their fees on May 12, 2005. 





[42]Goggin
submitted a separate affidavit to support each motion.





[43]See Alvarado,
830 S.W.2d at 914.





[44]See Downer
v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985) (holding
that a trial court does not abuse its discretion unless it acts arbitrarily or
unreasonably, without reference to any guiding rules or principles), cert.
denied, 476 U.S. 1159 (1986).  Comerica
Bank-Tex. v. Hamilton, No. 05-93-01804-CV, 1997 WL 421214 (Tex. App.CDallas
July 28, 1997, no writ) (not designated for publication), on which appellants
rely, does not require a different result. 
Comerica Bank was decided under former rule 215(5), which
required exclusion of the undisclosed evidence unless the proponent of the
evidence established good cause for the nondisclosureCregardless
of whether the other party was unfairly surprised by the nondisclosure.  Id. at *3.





[45]Tex. Prob. Code Ann. '
241(a) (Vernon 2003).





[46]Id. '
665(b).





[47]Id. ' 34A.





[48]Id. '
622(a).





[49]Tex. R. Civ. P. 131.





[50]In
light of this holding, we need not address appellants=
complaint that Burns did not file a pleading seeking Raesz=s
fees from appellants.  See Tex. R. App. P. 47.1 (providing that
the court of appeals need address only the issues raised that are necessary to
the disposition of the appeal).





[51]See Tex. R. Civ. P. 193.6(a).





[52]Appellants
also complain that the award is improper because Burns failed to obtain leave
of court to reopen the evidence, Goggin=s affidavit submitted in
support of the fee application was hearsay, and appellants were deprived of due
process because the trial court entered the order approving the fees without
providing appellants notice and an opportunity to be heard.   These complaints are waived because
appellants did not raise them in the trial court.  See Tex.
R. App. P. 33.1(a); Bushell,
803 S.W.2d at 712. 





[53]Tex. Lab. Code Ann. '
408.221(b); Transcont=l Ins. Co., 135
S.W.3d at 838.





[54]Tex. Lab. Code Ann. '
408.221(d) (Vernon 2006).





[55]See Uniroyal Goodrich Tire Co. v.
Martinez, 977
S.W.2d 328, 334 (Tex. 1998), cert. denied, 526 U.S. 1040 (1999);
Robert W. Calvert, "No Evidence" and "Insufficient
Evidence" Points of Error, 38 TEX. L.
REV. 361, 362-63 (1960) (both discussing legal sufficiency standard of review). 





[56]Tex. R. App. P. 44.1(a).





[57]In
comparison, the trial court awarded appellants $67,193.50 for attorney=s
fees and expenses incurred between September 1, 2002 through December 31, 2004,
at rates of $125 and $150 per hour. 





[58]Burns
requested approximately $117,066 in attorney=s fees for pretrial services
rendered between September 2002 and May 11, 2005.  The trial court awarded Burns all the attorney=s
fees and expenses he requested for post-trial work, but this amount is not
included in the trial court=s judgment because the order
approving those fees was issued after judgment was rendered. 





[59]See Tex. Lab. Code Ann. '
408.221(c) (providing that the prevailing claimant is entitled to reasonable
and necessary attorney=s
fees, as determined by the court based on the factors set out in section
408.221(d)).





[60]See Tex. R. App. P. 44.1(a)(1).  Burns does not argue that the trial court=s
actions prevented him from properly presenting his case to our court.